Allen L. NICKLASSON, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 84496.

Supreme Court of Missouri,
En Banc.

May 27, 2003.

Susan M. Hunt, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Richard A. Starnes, Assistant Attorney General, Jefferson City, for respondent.

STEPHEN N. LIMBAUGH, JR., Chief Justice.

Appellant Allen L. Nicklasson was convicted and sentenced to death for the execution style murder of Richard Drummond on August 24, 1994. This Court affirmed the conviction and imposition of capital punishment in *State v. Nicklasson*, 967 S.W.2d 596 (Mo. banc 1998), and the facts of the case are recited in full in that opinion. In the Rule 29.15 motion that is the subject of this appeal, Nicklasson alleged two claims of ineffective assistance of counsel, one at the trial level and one on direct appeal. The motion court denied relief, and Nicklasson appeals. Because this case involves the death penalty, this Court has jurisdiction. Mo. CONST. art. V, sec. 10; order of June 16, 1988. The judgment is affirmed.

To establish ineffective assistance of counsel, a movant must show that "counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney" and that he was thereby prejudiced. *Bucklew v. State*, 38 S.W.3d 395, 397 (Mo. banc 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To prove prejudice, the movant must show " 'a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different.' "

*Lyons v. State,* 39 S.W.3d 32, 36 (Mo. banc 2001) (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052). The movant bears the burden of proving grounds for relief by a preponderance of the evidence. *State v. Kreutzer,* 928 S.W.2d 854, 877 (Mo. banc 1996); Rule 29.15(i).

██ In reviewing the motion court's denial of a claim of ineffective assistance, this Court is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly errone-ous. *Lyons,* 39 S.W.3d at 36. Findings of fact and conclusions of law will be deemed clearly erroneous only if, after a review of the entire record, the Court is left with the definite and firm impression that a mistake has been made. *Id.*

██ In his first point, Nicklasson alleg-es that trial counsel was constitutionally ineffective for failing to object to the pros-ecution's closing argument, which Nicklas-son contends constituted a misstatement of the law that undermined his diminished capacity defense.

The defense theory presented at trial was that, due to a mental disease or defect, Nicklasson was incapable of acting with deliberation—the requisite mental state—on the date of the offense. In support of this theory, Nicklasson offered the testi-mony of a psychiatrist and a psychologist, both of whom averred that appellant suf-fered from post-traumatic stress disorder and borderline personality disorder—two conditions that they classified as mental diseases or defects as defined under sec-tion 552.010, RSMo 1994. The State pre-sented rebuttal testimony from a psycholo-gist appointed by the court who testified that Nicklasson did not suffer from a men-tal disease or defect, but from anti-social personality disorder.

In his guilt-phase closing argument, the prosecutor made the following comments concerning the significance of Nicklasson's mental conditions:

> You've heard testimony from a number of psychologists, a couple who have been hired to [the] defense, with one who had been appointed by the Court. And there's no doubt in anybody's mind that there is a personality disorder here. *Whether that rises to the level of mental disease or defect doesn't matter, given the evidence that's before you.* It's clear it wasn't affecting him then.

Counsel did not object to these statements. This failure, according to Nicklasson, was ineffective assistance because the prosecu-tor misstated the law by informing the jury that the fact that Nicklasson was suffering from a mental disorder "doesn't matter," when under section 552.015.2(8), evidence of a mental disorder is relevant to determine deliberation. After conducting an evidentiary hearing on the issue, the motion court determined that the argu-ment presented was not a misstatement of the law, but a "reasonable interpretation of the law of diminished capacity."

██ This Court agrees. When the chal-lenged statements are considered in con-text, it is clear that the prosecutor's seem-ing disregard for Nicklasson's evidence of mental instability was not at all inconsis-tent with the law of diminished capacity. In order to prevail on a diminished capaci-ty defense, a defendant must introduce evidence that he or she suffered from a mental disease or defect, *State v. Erwin,* 848 S.W.2d 476, 480 (Mo. banc 1993), and in this respect, evidence of a mental dis-ease or defect does indeed "matter." But, the existence of a mental disease of defect will not alone suffice to diminish the defen-dant's criminal responsibility. *See State v. Foerstel,* 674 S.W.2d 583, 592 (Mo.App. 1984) ("Under [the] defense [of diminished capacity], a finding of mental disease or defect would *permit* the jury to conclude

that appellant was unable to form the necessary specific or general intent and to thereby acquit him of the offense charged ...") (emphasis added). The jury must still determine, considering all the evidence, whether that mental disease or defect prevented the defendant from forming the requisite mental state at the time of the offense. The challenged statement represents nothing more than an acknowledgment of this fact, and a commentary on the strength of the deliberation evidence submitted at trial.[1]

■ Appellant overlooks the clear import of the prosecutor's statements. The prosecutor stated: "Whether [appellant's personality disorder] rises to the level of mental disease or defect doesn't matter, *given the evidence that's before you.*" By this statement, the prosecutor was not misdirecting the jury, but simply commenting that the evidence of mental disease or defect is not necessarily determinative. In fact, to hold that the prosecutor's statements constituted an erroneous statement of law would be tantamount to holding that, once the jury determines the existence of a mental disease or defect, the defendant would be entitled to a verdict of acquittal. As the diminished capacity instruction itself indicates, this is simply not the case. Under MAI–CR3d 308.03, the jury must consider all evidence—not just evidence that the defendant suffered from a mental disease or defect—in determining whether the accused acted

with the requisite intent.[2] *See also State v. Bell,* 798 S.W.2d 481, 487 (Mo.App. 1990) ("[T]he fact that the only psychiatric testimony in this case was to the effect that the defendant did not *knowingly* cause serious physical injury [due to a mental defect] does not mean that the jury must reject a reasonable inference from his actions that the defendant acted knowingly.") Considered in context, the prosecutor's arguments, although inartfully phrased, merely advised the jury that in accordance with the diminished capacity instruction, evidence suggesting that appellant suffered from a mental disease or defect is just one consideration that must be taken into account in determining whether Nicklasson acted with the requisite state of mind. While clearer phrasing should be utilized in the future, because in context the prosecutor's comments did not constitute a misstatement of the law or mislead the jury, Nicklasson's first claim of error must fail. Any objection lodged by trial counsel would not have been well-taken, and counsel cannot be ineffective for failing to raise a non-meritorious objection. *State v. Clay,* 975 S.W.2d 121, 135 (Mo. banc 1998).

■ In his next point, Nicklasson alleges that appellate counsel was ineffective for failing to challenge on direct appeal his court-ordered physical restraint during trial. Throughout the course of the trial and over defense objections, Nicklasson's

---

1. The deliberation evidence presented at trial included evidence that Nicklasson 1) took the victim to a secluded area, 2) told the victim to say his prayers prior to shooting him, 3) attempted to flee the jurisdiction after the murder, and 4) attempted to dispose of the murder weapon.

2. The diminished capacity instruction submitted in this case was modeled after MAI 308.03, which provides in pertinent part:

If, after considering all the evidence, including evidence that the defendant did or did not have a mental disease or defect, you have a reasonable doubt as to whether [Insert language as to the defendant having the culpable mental state ... ], you must find the defendant not guilty of [name of offense] as submitted in Instruction No. ——.

legs were shackled and sheets of brown paper were used to conceal the restraints from the jury. Nicklasson argues that the leg restraints could be heard throughout the courtroom, and that the attempted concealment only drew attention to the shackling. The motion court denied Nicklasson's claim without conducting an evidentiary hearing, finding, *inter alia*, that Nicklasson would not have been able to succeed on appeal because there was no evidence in the trial record indicating that any juror was aware of the shackling.

On the record presented, Nicklasson can show neither entitlement to an evidentiary hearing nor grounds warranting reversal of his conviction. The motion court is under no duty to conduct an evidentiary hearing where, as here, the motion, files and records of the case conclusively show that the movant is not entitled to relief on the underlying claim of error. *Maynard v. State*, 87 S.W.3d 865, 866 (Mo. banc 2002); Rule 29.15(h). Furthermore, to prevail on a claim of ineffective assistance of appellate counsel, the movant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it and that the claimed error would have required reversal on appeal. *Hall v. State*, 16 S.W.3d 582, 587 (Mo. banc 2000). In this case, not only would the alleged error not have required reversal on appeal, it was not error at all.

■■■■■ Though Nicklasson argues that the use of restraints unconstitutionally deprived him of the presumption of innocence, the record is devoid of any evidence that would support his claim. In the interest of maintaining courtroom safety, the trial court has considerable discretion to impose measures necessary to maintain order in the courtroom, and this discretion includes the use of physical restraints.

*State v. Armentrout*, 8 S.W.3d 99, 108 (Mo. banc 1999). Absent an abuse of this discretion, the trial court's judgment will not be disturbed on appeal. *See State v. Kinder*, 942 S.W.2d 313, 330 (Mo. banc 1996). Moreover, the trial court will be found to have abused its discretion only if the imposition of restraints "offends the logic of the circumstances or is arbitrary and unreasonable." *State v. Fisher*, 45 S.W.3d 512, 514 (Mo.App.2001). Factors relevant in determining the reasonableness of physical restraints include the accused's prior misconduct or threats of misconduct, the accused's history of violent offenses, and the nature of the offense charged. *Armentrout*, 8 S.W.3d at 108; *State v. Guinan*, 732 S.W.2d 174, 176 (Mo. banc 1987); *Fisher*, 45 S.W.3d at 515; *State v. Olney*, 954 S.W.2d 698, 701 (Mo.App.1997).

In the case at hand, Nicklasson was charged with first degree murder, which was part of a multi-state crime spree in which he admittedly committed two murders in Arizona and indiscriminately fired shots in a strip mall in California. Furthermore, on at least two separate occasions, Nicklasson had attacked security personnel while in the custody of state authorities. The first incident, which involved an assault of a security guard at the Moberly Correctional Center, resulted in a conviction for assault in the second degree. In the second incident, which occurred while he was awaiting trial for this offense, Nicklasson assaulted security personnel at the Clay County jail.

Given this pervasive and undisputed history of violence, and in particular, the disruptive and violent behavior while in custody, the trial court did not abuse his discretion by imposing physical restraints in this case. Moreover, because the record conclusively refutes his claim, Nicklasson is not entitled to an evidentiary hearing, and counsel was not ineffective for

failing to bring this claim to the attention of the appellate court.

This Court concludes that the motion court did not err in denying Nicklasson's claim for post-conviction relief, as neither trial nor appellate counsel rendered ineffective assistance by failing to raise non-meritorious claims. The judgment is affirmed.

All concur.