**James Willis TILLEY, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

**Nos. 27421, 27459.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 9, 2006.

Mark A. Grothoff, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Karen L. Kramer, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, Judge.

James Willis Tilley ("Movant") was convicted, after jury trial in the Circuit Court of Scott County, of attempting to manufacture a controlled substance, in violation of section 195.211 [1] (Count I), possession of a controlled substance, in violation of section 195.202 (Count II), and possession of chemicals proven to be precursor ingredients of methamphetamine, in violation of section 195.420 (Count III). He was sentenced as a prior and persistent offender [2] to concurrent prison terms of twenty years on each count. We affirmed Movant's convictions on direct appeal. See *State v. Tilley,* 104 S.W.3d 814, 816–17 (Mo.App. 2003). He now appeals the motion court's denial, following an evidentiary hearing, of his Rule 29.15 [3] motion for post-conviction relief.

Movant raises two points in this appeal. The first point alleges that trial counsel was ineffective in that he failed to object to Jury Instruction No. 12 ("Instruction"), on the basis that it did not conform to the pattern in the applicable Missouri Approved Instruction. Movant also contends

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

2. *See* sections 195.275 and 558.016.

3. All references to rules are to Missouri Court Rules (2006), unless otherwise indicated.

that appellate counsel was ineffective for failing to raise this instructional error in his direct appeal.

In his second point, Movant claims that trial counsel was ineffective in failing to object to the Instruction, which was the verdict director on Count III, and for failing to move to dismiss Movant's Count III conviction under section 195.420 (possession of precursor ingredients) pursuant to the Instruction, on the ground that the submission of and subsequent conviction under Count III violate the constitutional prohibition against double jeopardy. Movant contends that his conviction under Count III is a lesser-included offense of the conviction under Count I for violation of section 195.211 (attempting to manufacture a controlled substance). Because we find no merit in either point, we affirm the denial of Movant's motion for post-conviction relief.

### 1) *Factual and Procedural History* [4]

On April 13, 2001, deputy sheriff Sullivan ("Sullivan") learned via a female informant that she had been at Movant's house "the night before." While she was there, she received methamphetamine that "was pulled from underneath the cabinet between the kitchen and the living room."

Based on that information, Sullivan and sheriff's deputy Penrod ("Penrod") went to Movant's house near Chaffee, Missouri. When they arrived, Movant "was on the roof of a shed that was just southwest of the residence." Another person (later identified as Roger Graviett) came out the front door of the house. Penrod moved toward Graviett to speak with him, while Sullivan went to the shed to talk to Movant.

Sullivan testified he "hollered up to" Movant and asked him to come down and talk. Movant stepped to the edge of the shed roof and stated he would come down. Thereon, Movant turned and walked away from the roof's edge. Sullivan anticipated Movant was proceeding to the back of the shed where a ladder was located; consequently, Sullivan went to meet Movant at the bottom of the ladder. After getting to the back and waiting "for a few seconds" without Movant appearing, Sullivan stepped back in order that he "could see over the ladder." Although the shed was "small," Sullivan could not see Movant; consequently, he walked back to the front of the shed. When Sullivan still could not see Movant, he returned to the ladder and viewed Movant starting down the ladder. The foregoing caused Sullivan to wonder what Movant was doing because it was a small roof, yet Sullivan had to walk around to look for Movant. He also noted there were no tools on the roof.

After Movant was on the ground, Sullivan told him about the informant and asked permission to search his house. Movant consented to the search. Penrod then entered the house while Sullivan stayed outside with Movant and Graviett. When Penrod returned in "barely" over a minute, he indicated to Sullivan that he found methamphetamine in the cabinet location as described by the informant. The deputies arrested Graviett and Movant, called for a transport deputy, and began a more thorough search of the house.

Sullivan started the search in a "utility room" located between the bathroom and the back wall of a bedroom. There, he found a "duffel bag" in the middle of the floor. Knowing that methamphetamine labs are often mobile and components thereof are often transported in this man-

---

**4.** We borrow freely from the statement of facts in our opinion on the direct appeal without further attribution. *Tilley,* 104 S.W.3d at 817–18.

ner, Sullivan promptly opened the bag. Inside, he found a pint of Liquid Fire, two large spoons, a spatula, Aqua airline tubing, rubber gloves, side cutters, vice grips, plastic bags, coffee filters, plastic spoons, a hot plate, salt (contained in a plastic bag), and two Energizer lithium batteries. The two batteries were in a package designed to hold four batteries.

After seizing the duffel bag and its contents, Sullivan recalled Movant's delay in descending the shed roof. Accordingly, he went up to the roof where he found a "spot of white powder that was smashed in the shingles." He collected a sample of the powder, and a subsequent analysis thereof revealed it was methamphetamine.

Meanwhile, Penrod finished searching the kitchen area, where he found empty plastic bags in a trash can. These empty bags contained a residue which he described as "a real fine powder that they weren't able to scrape out when they were cleaning the bag out." This powder residue tested positive for methamphetamine. The medicine cabinet, in the only bathroom in Movant's home, contained two syringes. Penrod testified this fact was of "particular interest" because (1) some methamphetamine users inject the drug with this type of syringe, and (2) he found nothing in the bathroom to indicate a "medicinal purpose for the syringes," i.e., he found no "insulin or anything as such."

At trial, Sullivan testified that each item in the duffel bag was commonly used in the manufacture of methamphetamine using the anhydrous ammonia method. Sullivan explained in detail the function of each item. Moreover, he testified that, based on what he found in the bag and the fact that methamphetamine was in the house, it was his opinion that a substantial step had been taken toward the manufacture of methamphetamine. Penrod testified the "white" color of the methamphet-

amine found at Movant's house indicated it came from a "newer" batch, i.e., chemical evaporation will cause methamphetamine to darken over time.

The jury convicted Movant on all charges, and Movant was sentenced as a prior and persistent offender to a term of twenty years on each count, to be served concurrently. On direct appeal, we held, among other things, that Movant's convictions on Count I (attempting to manufacture methamphetamine) and Count III (possession of precursor ingredients for methamphetamine) were supported by sufficient evidence. *Tilley*, 104 S.W.3d at 822–23.

Movant then filed a *pro se* Rule 29.15 motion seeking post-conviction relief which was later amended by appointed counsel. Following an evidentiary hearing, the motion court issued findings of fact and conclusions of law denying Movant's amended motion. This appeal followed. Additional facts will be given as required to address and analyze Movant's points relied on.

### 2) *Standard of review*

This Court will uphold the findings and conclusions of the motion court unless they are clearly erroneous. Rule 29.15(k). Findings and conclusions are clearly erroneous if, after reviewing the entire record, the appellate court has the definite and firm impression that a mistake has been made. *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000).

There are two components to a claim of ineffective assistance of counsel. First, a movant must show that "counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney[.]" *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998). There is a presumption that counsel acted professionally and that any challenged action was

part of counsel's sound trial strategy. *Id.* Second, if the movant establishes that counsel's performance was not reasonably competent, then the movant must demonstrate that he or she was prejudiced by counsel's performance. *Id.* To demonstrate prejudice, a movant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different. *Id.*

### 3) *Point I: Jury Instruction No. 12*

In his first point, Movant alleges the trial court clearly erred in denying Movant's Rule 29.15 motion for post-conviction relief, in that Movant was denied effective assistance of both trial and appellate counsel. Movant claims that trial counsel was ineffective in failing to object to the Instruction, which was the verdict-directing instruction on the charge of possession of precursor ingredients with the intent to manufacture under Count III, because the Instruction failed to conform to the pattern of the applicable Missouri Approved Instruction, MAI–CR3d 325.34. Movant contends that had trial counsel objected, the instruction would not have been submitted to the jury, and there is a reasonable probability that the outcome of the trial would have been different.

Movant also asserts that appellate counsel was ineffective because this defect in the Instruction was not raised on direct appeal.[5] He contends that if appellate counsel had raised the issue on appeal, a reasonable probability exists that Movant's conviction on Count III would have been reversed.

### a) *Ineffective Assistance of Trial Counsel*

Movant bears the burden of establishing not only the occurrence of error, but that he was prejudiced as a result of such error. The general rule is that instructional errors are not cognizable in a Rule 29.15 proceeding. *Young v. State,* 761 S.W.2d 725, 727 (Mo.App.1988). An exception arises only if the error rises to the level of a constitutional error. *Id.* A constitutional error is defined as one so glaring that it substantially deprives an accused of the right to a fair trial. *Atkins v. State,* 741 S.W.2d 729, 731 (Mo.App. 1987).

As submitted to the jury, the Instruction read:

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about April 13, 2001, in the County of Scott, State of Missouri, the defendant knowingly possessed liquid fire, salt and lithium, and

Second, that the defendant knew of the presence of these items and their nature, and

Third, that the defendant did so with the intent to *possess* liquid fire, salt, and lithium to create methamphetamine, a controlled substance,

then you will find the defendant guilty under Count III of possession of chemicals with the intent to create methamphetamine, a controlled substance. (Emphasis added.)

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

---

5. Since trial counsel failed to object, the issue was not properly preserved for appellate review. Appellate counsel, however, could have asked this Court to review the issue for plain error, pursuant to Rule 30.20.

MAI–CR3d 325.34 prescribes the approved pattern language for paragraph third as follows:

> Third, that the defendant did so with the intent to (*Insert appropriate term from Section 195.420.1,[6] such as "convert," "process" or "alter"* (name of chemical listed in Section 195.400) to create (name of controlled substance or controlled substance analogue), a (controlled substance) (controlled substance analogue). (Emphasis added)).

Paragraph third of the Instruction uses the word "possess" instead of "manufacture, compound, convert, produce, process, prepare, test, or otherwise alter[,]" as set forth in section 195.420.1 and as patterned by MAI–CR3d 325.34. Movant's trial counsel did not object to the submission of the Instruction to the jury.

 Rule 28.02(c) provides, in part: "Whenever there is an MAI–CR instruction or verdict form applicable under the law and Notes On Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form." Instructional error constitutes reversible error only when there was error in submitting the instruction and that error prejudiced the defendant. *State v. Taylor*, 134 S.W.3d 21, 25 (Mo. banc 2004). "Any deviation from the approved instructions shall constitute error and its prejudicial effect must be 'judicially determined by considering the facts and instructions together.'" *State v. Dis-*

*mang*, 151 S.W.3d 155, 164 (Mo.App.2004) (quoting *State v. Thomas*, 75 S.W.3d 788, 791 (Mo.App.2002)); *see also* Rule 28.02(f).[7] "When used in connection with assessing erroneous jury instructions, 'prejudice' is the potential for confusing or misleading the jury." *Dismang*, 151 S.W.3d at 164.

Trial counsel's performance is presumed to be effective, and therefore Movant bears the burden of overcoming that presumption by a preponderance of the evidence. Rule 29.15(i); *Nicklasson v. State*, 105 S.W.3d 482, 484 (Mo. banc 2003); *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996). In order for Movant to prevail on his ineffective assistance of counsel claim, he must first demonstrate "that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances." *Crooks v. State*, 131 S.W.3d 407, 409 (Mo. App.2004). Second, he must demonstrate that not only was his trial counsel ineffective, *but that he was prejudiced by trial counsel's poor performance.* *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984) (Emphasis added). "Prejudice is shown where 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Crooks*, 131 S.W.3d at 409 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2052).

---

**6.** Section 195.420.1 provides:

It is unlawful for any person to possess chemicals listed in subsection 2 of section 195.400, or reagents, or solvents, or any other chemicals proven to be precursor ingredients of methamphetamine or amphetamine, as established by expert testimony pursuant to subsection 3 of this section, with the intent to *manufacture, compound, convert, produce, process, prepare, test, or otherwise alter* that chemical to create a controlled substance or a

controlled substance analogue in violation of section 195.005 to 195.425. (Emphasis added.)

**7.** Rule 28.02(f) reads, in pertinent part: "The giving or failure to give an instruction or verdict form in violation of this Rule 28.02 or any applicable Notes On Use shall constitute error, the error's prejudicial effect to be judicially determined[.]"

If Movant fails to satisfy either prong, relief will be denied. *State v. Simmons,* 955 S.W.2d 752, 772 (Mo. banc 1997); *Wright v. State,* 125 S.W.3d 861, 866 (Mo. App.2003).

■ Movant contends that if his trial counsel had objected to the Instruction, the trial court would have been compelled to sustain such an objection, the instruction would not have been submitted to the jury, and the outcome of the trial would have been different.[8]

■ While we agree that failure to object to an improper instruction is error and satisfies the performance prong of the test for ineffective assistance of counsel, Movant fails to direct us to anything in the record to support his claim that the outcome of the trial would have been different. Such a showing is necessary to demonstrate prejudice to Movant as required by Rule 28.02(f) related to the prejudicial effect of the submission of the erroneous instruction and by the prejudice prong of the test for ineffective assistance of counsel. Movant does not argue that the Instruction misled or confused the jury or that improper arguments were made as a result of the error in the Instruction. Movant simply relies upon mere conjecture and speculation as his basis for asserting that the outcome of the trial would have been different.[9]

The motion court made the following findings of fact and conclusions of law related to the Instruction:

The state's verdict director did not include a word such as "convert," "process" or "alter" said chemicals to create methamphetamine, a controlled substance as directed by the notes on use. However, the state's third element does indicate as whole that the jury was to find Movant intended to use liquid fire, salt, and lithium that he possessed to create methamphetamine, a controlled substance. The word "create" in that instruction is defined in Webster's Online Dictionary (2005)[and] means to produce, bring into existence, or make something. The jury having read the wording in the third element had to have found that the Movant meant to use those chemicals/items to make or create methamphetamine. Because it is reasonable that the jury was adequately guided in coming to a decision on the charge of possession of chemicals with the intent to manufacture methamphetamine, he has suffered no prejudice in the use of that instruction that would raise his trial to the level of manifest injustice requiring a new trial.

The motion court made a "judicial determination" that the submission of the Instruction, even though erroneous, did not

---

8. Implicit in Movant's argument is the assumption that had trial counsel made a timely objection to the submission of the Instruction in its erroneous form, no verdict directing instruction on Count III would have been submitted to the jury. Therefore, Movant could not have been found guilty on Count III, and the outcome of the trial would have been different. However, it is a much more reasonable assumption that had trial counsel objected on the basis that the Instruction did not conform with the pattern instruction of MAI–CR3d 325.34, the trial court would have corrected the instruction by deleting the word

"possess" and substituting "convert," "process," or "alter" in its place.

9. The totality of Movant's argument on this issue in his brief consists of the following:

"The probability that counsel's failure to object to the improper instruction affected the outcome of the case cannot be ignored and meets the minimum standard of undermining confidence in the outcome. *Moore, supra.* If appellant's counsel had objected to the erroneous verdict director, a reasonable probability exists that the result of appellant's trial would have been different."

prejudice Movant. *See* Rule 28.02(f). Movant does not directly challenge this finding and does not assert any argument, reason, or basis upon which this finding is clearly erroneous. *See* Rule 29.15(k). We are not left with a firm impression that a mistake has been made by the motion court in its conclusion that the jury was not misled or confused by the erroneous instruction.

### b) *Ineffective Assistance of Appellate Counsel on Direct Appeal*

 In his first point, Movant also argues that he was denied effective assistance of appellate counsel in that appellate counsel failed to raise the issue of the error in the Instruction on direct appeal. "The standard of review for a claim of ineffective assistance of appellate counsel is essentially the same as that employed with trial counsel," and, as set forth in *Strickland, supra,* Movant must show deficient performance of counsel and resulting prejudice. *Helmig v. State,* 42 S.W.3d 658, 682 (Mo.App.2001).

 As explained in *Moss v. State,* 10 S.W.3d 508, 514–15 (Mo. banc 2000):

> To support a [Rule 29.15 motion] due to ineffective assistance of appellate counsel, strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized it and asserted it. The right to relief . . . due to ineffective assistance of appellate counsel inevitably tracks the plain error rule; i.e., the error that was not raised on appeal was so substantial as to amount to a manifest injustice or a miscarriage of justice.

(quoting *Reuscher v. State,* 887 S.W.2d 588, 591 (Mo. banc 1994)).

 Here, the instructional error was not properly preserved for appellate review, in that the claim was not included in Movant's motion for new trial. An attorney will not be found ineffective for failing to raise an unpreserved error on appeal. *Sanfilippo v. State,* 143 S.W.3d 765, 769 (Mo.App.2004). Therefore, Movant has failed to satisfy the performance prong of the test for ineffective assistance of counsel.

 Even if appellate counsel had raised this issue on direct appeal, it would not have required reversal. Reversal on plain error grounds demands a determination that " 'the error so substantially affected the defendant's rights that a manifest injustice or a miscarriage of justice' " resulted. *State v. Dillard,* 158 S.W.3d 291, 299 (Mo.App.2005) (quoting *State v. Deckard,* 18 S.W.3d 495, 497 (Mo.App.2000)). Having found that the submission of the Instruction resulted in no prejudice to Movant, it follows that a miscarriage of justice did not result. *See Aaron v. State,* 81 S.W.3d 682, 697–98 (Mo.App.2002) (movant's allegations of plain error would not have been successful on appeal, therefore, movant suffered no prejudice from appellate counsel's failure to raise them).

The motion court did not clearly err in finding that Movant was not denied effective assistance of appellate counsel. Movant's point one is denied.

### 4) *Point II: Double Jeopardy*

 In his second point, Movant claims that he was denied effective assistance of counsel because trial counsel failed to raise the issue of double jeopardy.[10] Movant asserts that his convictions

---

10. The issue of double jeopardy was raised by Movant's appellate counsel on the direct ap-

peal. *Tilley,* 104 S.W.3d at 824. Generally, matters decided on direct appeal are not re-

on both Counts I and III violate his right to be free from double jeopardy and that a competent attorney would have raised the issue, thus protecting him from multiple convictions. In particular, Movant argues that he could not have been in possession of precursors needed to manufacture methamphetamine, so as to make him guilty of attempting to manufacture under Count I, without being aware of the presence of the precursors with the intent to manufacture methamphetamine, and therefore, also guilty under Count III.

Protections against double jeopardy arise from the Fifth Amendment to the United States Constitution, which provides, in part: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." This provision, pursuant to the Fourteenth Amendment, prohibits states from imposing multiple punishments for the same offense. *Benton v. Maryland*, 395 U.S. 784, 791, 89 S.Ct. 2056, 2060–61, 23 L.Ed.2d 707 (1969). Although it generally does not allow the splitting of a single crime into separate parts for piecemeal prosecution, the double jeopardy clause is not violated when a defendant is punished for more than one offense arising from the same set of facts. *State v. Murphy*, 989 S.W.2d 637, 639 (Mo.App.1999). The legislative intent regarding such cumulative sentences is first determined by examining the relevant statutes. *State v. Villa–Perez*, 835 S.W.2d 897, 903 (Mo. banc 1992).

Movant was convicted under Count I of attempting to manufacture a controlled substance (pursuant to section 195.211) and under Count III of possession of precursor ingredients for methamphet-

amine with the intent to manufacture that drug (pursuant to section 195.420). Since neither statute specifies whether the legislature intended to punish the same conduct under both statutes, section 556.041, Missouri's general cumulative punishment statute, is applicable. *See Villa–Perez*, 835 S.W.2d at 903.

Section 556.041, in relevant part, states:

When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each offense. He may not, however, be convicted of more than one offense if

(1) One offense is included in the other, as defined in section 556.046[.]

Section 556.046.1(1) provides, in relevant part:

An offense is so included when:

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]

"Application of double jeopardy analysis, under the ... multiple offense limitation statute, thus requires determination of the facts necessary to prove each offense involved." *State v. McLemore*, 782 S.W.2d 127, 128 (Mo.App. 1989). "The analysis focuses upon the statutory elements of each offense, rather than upon the evidence actually adduced at trial." *Id.* Thus, if each of the two offenses contains an element that the other lacks, the defendant may be convicted of both offenses without violating his double jeopardy rights. "Usually the analysis is uncomplicated." *Id.* "The elements of each offense are gleaned from statutory or

viewable under the guise of a post-conviction motion. *Schlup v. State*, 758 S.W.2d 715, 716 (Mo.1988). On direct appeal, we did not review Movant's double jeopardy claim because it had not been properly preserved for appeal.

*Tilley*, 104 S.W.3d at 824. Therefore, the issue of double jeopardy is first addressed on its merits in this appeal as it relates to the alleged ineffective assistance of trial counsel's failure to raise it in the trial court.

common law definitions and, then, simply compared." *Id.* at 128–29.

Count I charged attempting to manufacture a controlled substance and is governed by section 195.211.1, which provides, in part: "[I]t is unlawful for any person to attempt to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance." To convict on a charge of attempting to manufacture methamphetamine requires that the State must prove that Movant: (1) took a substantial step toward the commission of the offense; and (2) that Movant engaged in such conduct with the purpose of committing such offense. Section 195.211; *State v. Molasky*, 765 S.W.2d 597, 601 (Mo. banc 1989); *State v. White*, 14 S.W.3d 121, 126–27 (Mo.App.2000). A "substantial step" is defined as "conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Section 564.011.1.

Count III charged possession of precursor ingredients for methamphetamine with the intent to manufacture that drug and is governed by section 195.420.1, which provides, in part:

1. It is unlawful for any person to possess chemicals listed in subsection 2 of section 195.400, or reagents, or solvents, or any other chemicals proven to be precursor ingredients of methamphetamine or amphetamine, .... with the intent to manufacture, compound, convert, produce, process, prepare, test, or otherwise alter that chemical to create a controlled substance or a controlled substance analogue in violation of sections 195.005 to 195.425.

To convict on a charge of possession of a precursor for methamphetamine with the intent to manufacture that drug requires that the State must prove that Movant: (1) possessed the precursor; (2) was aware of its presence; and (3) possessed it with the intent to manufacture methamphetamine. Section 195.420; *State v. Polson*, 145 S.W.3d 881, 893 (Mo.App.2004).

The Western District of our court was presented with an analogous factual background and argument in *State v. White*, *supra*. The defendant in *White* argued that his convictions for attempting to manufacture a controlled substance, as proscribed by section 195.211, and possession of pseudoephedrine with the intent to manufacture methamphetamine, as proscribed by section 195.246, violated his right to be free from double jeopardy. *White*, 14 S.W.3d at 125. The only difference between *White* and the instant case is that the defendant in *White* was charged with possession of pseudoephedrine with intent to manufacture methamphetamine, under section 195.246, whereas in the instant case, Movant was charged with possession of precursors with intent to manufacture methamphetamine, under section 195.420. However, the elements to prove possession of pseudoephedrine, which is a precursor of methamphetamine, are the same under sections 195.246 and 195.420.[11] *State v. Angle*, 146 S.W.3d 4, 11 (Mo.App.2004); section 195.400.2(20). This makes *White* instructive and applicable to the resolution of this case.

Using the same structure for its double jeopardy analysis as previously described in this opinion, the court in *White* concluded:

**11.** The State must prove that the defendant: (1) possessed the pseudoephedrine/precursor; (2) was aware of its presence; and (3) possessed it with intent to manufacture methamphetamine. Sections 195.246.1 and 195.420.1; *White*, 14 S.W.3d at 127.

# 738

Therefore, an attempt to manufacture methamphetamine requires conduct strongly corroborative of the act of producing methamphetamine. We find no case law which requires proof that the defendant possessed pseudoephedrine to support a conviction for an attempt to manufacture methamphetamine. Conversely, possession of pseudoephedrine requires proof that the defendant possessed pseudoephedrine with some kind of intent that it would be used to make methamphetamine. It does not require evidence that the defendant was actively engaging in the process of manufacturing methamphetamine. Since the crime of possession of pseudoephedrine with the intent to manufacture contains an element not contained in the crime of attempting to manufacture methamphetamine, and the crime of attempting to manufacture methamphetamine contains an element not contained in the crime of possession of pseudoephedrine with the intent to manufacture, double jeopardy is not implicated.

*Id.* at 127.

While the *White* court was addressing the particular precursor of pseudoephedrine, this analysis is equally applicable to possession of any other particular precursor, such as lithium contained in lithium batteries, the possession of which Movant was charged with and convicted of in this case. Possession of lithium, an element of the possession charge, is not a required element of attempting to manufacture methamphetamine. Likewise, and conversely, conduct strongly corroborative of the act of producing methamphetamine to satisfy the substantial-step element of an attempt to manufacture methamphetamine is not an element of possession of a precursor with intent to manufacture methamphetamine. Although some of the same evidence may be used to support a finding of each of these differing elements, it does not alter the fact that they are distinct elements related to each specific crime.

 The motion court found that Movant's claim of double jeopardy was without merit and would not have been successful even if raised by trial counsel. As such, trial counsel was not ineffective for not raising it. Counsel is not ineffective for failing to make non-meritorious objections. *State v. Clemons,* 946 S.W.2d 206, 208 (Mo. banc 1997). The findings and conclusions of the motion court on this issue are not clearly erroneous. Point II is denied.

### 5) *Conclusion*

The trial court's judgment denying Movant's motion for post-conviction relief under Rule 29.15 is affirmed.

GARRISON, J., and BARNEY, J., concur.