**STATE of Missouri, Respondent,**

v.

**Lyle NEAL, Appellant.**

**No. WD35644.**

Missouri Court of Appeals,
Western District.

Jan. 29, 1985.

J. Armin Rust, Public Defender, Lexington, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, SHANGLER and DIXON, JJ.

DIXON, Judge.

Neal was convicted of conspiracy to commit arson in the second degree, Section 564.016 RSMo 1978, and unlawful possession of an explosive weapon, Section 571.-020 RSMo Supp.1984, and was sentenced to two and three years respectively, to run concurrently. He asserts that he was subjected to double jeopardy, that the judge erred in entering the jury room and responding to questions during deliberations, that there was insufficient evidence, and that there was instructional error. Affirmed.

Rena Storm telephoned Al Crowell, the Waverly, Missouri, Chief of Police at approximately 4:00 to 4:30 a.m. on May 19, 1983, and stated she had been awakened by

voices of two men fighting or arguing in the alley between her apartment building and a hardware store. She told Crowell she had heard one man say, "[t]he next time you get me up in the middle of the night to do something stupid. . . ." Crowell drove to the area, parked his car, and walked into the alley. There he saw two men, one of whom he recognized as Dennis Madison, Neal's cousin, whom he had seen earlier in the evening in Neal's company. Crowell heard Madison say, "We'll throw the son-of-a-bitches into the hole right there." He then heard the other man respond, "No. No, we'll throw the son-of-a-bitches in that open window between the two buildings." Exercising caution, Crowell left the area, picked up his deputy for a back-up and then returned to the alley. There they found the two men gone, but found three beer bottles filled with gasoline and stuffed with rags, which Crowell left in Ms. Storm's care. Twelve to fifteen minutes later, and three to four blocks away, Crowell and the deputy found Madison and Neal together. When the officers approached, the men ran in different directions. Neal, wearing gloves that reeked of gasoline, was apprehended immediately. Madison escaped but turned himself in the next day. Neal was jury tried and sentenced to two and three years, which the judge set to run concurrently, for conspiracy to commit arson and possession of an explosive weapon. During their deliberations, the jury asked the judge to enter the jury room to answer some questions. Accompanied by the court reporter, who recorded the entire colloquy, the judge did so.

■ In his first point, Neal contends that under the *Blockburger* test [*Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ], he was subjected to double jeopardy because the knowing possession of an explosive weapon was one of the overt acts of the conspiracy count and was also separately charged, and because the same evidence was adduced at trial on both counts. Neal failed to raise this constitutional issue at the earliest moment possible, when the case was submitted to the jury, and thus failed to pre-

serve the issue. *State v. Thompson*, 627 S.W.2d 298, 303 (Mo. banc 1982); *State v. Byrne*, 503 S.W.2d 693, 695–96 (Mo. banc 1973). Despite the lack of preservation, the point will be reviewed *ex gratia*.

■ In *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182, the Supreme Court stated that "the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." If so, the defendant is not subjected to double jeopardy by a charge and conviction of both offenses. The elements of the two offenses at issue here are entirely dissimilar and thus, Neal was not subjected to double jeopardy. A conspiracy to commit arson in the second degree requires (1) the purpose or intent to damage a building or inhabitable structure by starting a fire or causing an explosion; (2) an agreement with one or more people to do the act that is the offense; and (3) pursuant to the agreement, the commission of the overt act, by at least one of the people. Sections 564.016 and 569.050.1 RSMo 1978. Possession of an explosive weapon requires the (1) knowing (2) possession of (3) an explosive weapon. Section 571.020.1(1) RSMo Supp. 1984. One could thus conspire to commit second degree arson and do an overt act in furtherance of the conspiracy without even possessing an explosive weapon. In fact, "the overt act required for a conspiracy conviction need not even be a substantial step in the commission of the target offense." *State v. Cornman*, No. 12,845, slip op. at 18 (Mo.App.S.D. Aug. 30, 1984). In rejecting the same argument in an analogous situation, after noting the dissimilarity in elements of the two offenses in question, the Southern District recently stated, "[m]oreover, defendant's double jeopardy argument has been rejected in *Pinkerton [v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)], *Callanan [v. United States*, 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961)], and *Cardarella [v. United States*, 375 F.2d 222 (8th Cir.1967), *cert. denied*, 389 U.S. 882, 88 S.Ct. 129, 19

L.Ed.2d 176 (1967)]. In each case, the accused was convicted of conspiracy and of one or more substantive offenses that were the same overt acts alleged in the conspiracy charge. The convictions were upheld." *Cornman, supra,* slip op. at 19. Because the two offenses do not share common elements, Neal's convictions of both offenses did not place him twice in jeopardy for the same offense.

Neal also asserts the court erred in entering the jury room during deliberations and responding to the jurors' questions. The judge was accompanied by the court reporter who transcribed the following colloquy:

(The jury began deliberations at 4:43 p.m. At 5:40 the following proceedings were had in the jury room:)

THE COURT: They tell me you have a question.

MR. MEYER: Yes. We are in question as to if on each of these counts we would assess one year in the penitentiary, or one year incarceration on each count, would they be served concurrently, and/or would the individual be at the county jail, or would he be at the state level of incarceration?

THE COURT: Well, all I can tell you is that—what I want to do is tell you to read the instructions. I think they say, but apparently this instruction does not say (indicating). But I think if you assess the punishment at actually one year, it's going to be under number one on each—

MR. MEYER: Count?

THE COURT: —count. It's probably going to be in the Department of Corrections. And if you assess it—in other words, if it says county jail, it's talking about county jail. Does that answer your question?

MRS. EMERSON: Would that be one year for each count, or just—or two years?

THE COURT: Total?

MRS. EMERSON: One for one count, and one for the other?

THE COURT: You are talking about consecutive and concurrent?

MR. MEYER: Right.

THE COURT: All right, that is a matter for the discretion of the Court in assessing the sentence.

MR. MEYER: Okay.

THE COURT: Okay. So—

MR. EDWARDS: On a year what does—how long do you have to be in there before you are up for parole?

THE COURT: I'm not at liberty to answer your question. I can't answer that question. Probation really is not a matter for you or me at the time to consider. Does that answer your question?

MR. MEYER: Yes, sir.

THE COURT: Or does that not answer your question? Okay, I'm sorry. Thank you all.

(The jury resumed their deliberations, and at 6:08 p.m. the jury returned into open court with their verdict.)

Neal asserts this communication by the court to the jury is error within the ruling of *State v. Cooper,* 648 S.W.2d 137 (Mo. App.1983). *Cooper* has no bearing on the issues presented in the instant case, for in *Cooper* there was both a separation of the jury and a communication between one juror and the trial judge.

■ The issue here is whether the judge's responses to the jury's questions were appropriate. The manner in which the responses were given was not appropriate. It would have been better practice for the trial court to have asked the jury to commit the questions to written form and, after having seen them, to have responded in open court on the record. Such a course of action would have eliminated the awkwardness of the court's answer concerning the place of confinement. Following that procedure would have enabled the trial court to have summoned the lawyers if they were at hand and to have made a record as to any objections to the proposed answers. The trial judge is not to be faulted for proceeding without the lawyers if

they were not available. It is the lawyer's obligation to remain available to the court for just such contingencies as this.

■ Neal complains that the trial judge's response with respect to the place of confinement for a one-year term somehow led the jury to impose a larger sentence. The judge's response set forth above is awkward since he was obviously trying to examine the instruction as he responded. However, taken as a whole, his statement does not vary from the instructions given the jury. The statement is a correct statement of the law and could not have misled the jury. This is particularly so since the jury was required, by the form of verdict, to write out the sentence from alternatives furnished. The second alternative was the one year, county jail option without fine, and the third alternative was a term of imprisonment and a fine, which the jury imposed. The jury could not have written its verdict as it did without being aware of the option of assessing punishment in the county jail. The trial court had told the jury that it depended upon the alternative they selected as to the place of confinement. When the court's response to the jurors' questions is a correct statement of law and does not confuse or mislead them, no error is shown. *See State v. Goree*, 672 S.W.2d 369 (Mo.App.1984).

The trial court's response to the question concerning consecutive and concurrent sentences was correct and very much like a similar response in *State v. Duisen*, 428 S.W.2d 169 (Mo. banc 1967). As the *Goree* court said, it "does not parrot that given in *Duisen* [*but*] it states the same principle which we find neither misleading or confusing." 672 S.W.2d at 370. The response concerning parole is controlled by *Duisen*.

There is no error in the context of this case, but it bears repeating that what has occurred here demonstrates the potential for error when the trial judge attempts an oral question and answer session with the jury.

Neal next asserts there was insufficient evidence to convict him of conspiracy to commit arson. Where sufficiency of the evidence is questioned, everything must be considered in a light most favorable to the verdict and all inferences and evidence to the contrary must be ignored. *State v. Brown*, 660 S.W.2d 694, 699 (Mo. banc 1983).

■ Because he had no matches when he was apprehended and he and Madison were arguing in the alley, Neal contends there is no evidence of an agreement to commit arson. His arguments are inapposite. While no matches were found on Neal, it is not to say his cohort, Madison, had none at the time. Likewise, the argument between the two men in the alley did not focus on *whether* to throw the Molotov cocktails but rather on *where* to throw them. The evidence taken in its most favorable intendment showed that Neal and Madison were in the alley on May 19 and intended to use the firebombs. Chief Crowell recognized Madison's face and voice when the men were in the alley. While he did not then recognize the second man, 12–15 minutes later and only 3–4 blocks away, Crowell and his deputy apprehended Neal who was with Madison after the two had fled from the officers. Crowell later identified Neal as the second man in the alley because Neal often "ran with" Madison, he had seen them together earlier in the evening, Neal's height and build were very similar to that of the second man, Neal and the second man were wearing similar stocking caps, and, when apprehended in Madison's presence, Neal's clothes and the gloves he was wearing reeked of gasoline. That the two men agreed to commit arson was established by their statements, overheard by Crowell, about where to throw the bottles, and the three bottles themselves, which Crowell found in the alley after the men had left and which had not been there on his two previous passes through the alley. This evidence is sufficient to sustain the verdict.

■ Finally, Neal argues that the court's failure to define, *sua sponte*, "explosive weapon" in Count II was prejudicial error. While this point need not be reviewed, as

Neal failed to set forth the desired instruction, *State v. Lehman,* 634 S.W.2d 542, 545 (Mo.App.1982); Rule 30.06(e), to eliminate further contention, it will be considered. A common word that can be generally understood and has no specialized meaning need not be defined unless a party so requests, *State v. Goodman,* 490 S.W.2d 86, 87 (Mo. 1973) or MAI–CR2d so requires. *State v. Moland,* 626 S.W.2d 368, 372 (Mo.1982). Under Count II, Neal was charged and convicted of the unlawful possession of an "explosive weapon," Section 571.020.1(1) RSMo Supp.1984, or "incendiary firebomb adapted to inflict substantial property damage." Section 571.010(4) RSMo Supp.1984 defines an explosive weapon as "... any explosive, incendiary, or poison gas bomb or similar device designed or adapted for the purpose of inflicting death, serious physical injury, or substantial property damage; or any device designed or adapted for delivering or shooting such a weapon."

 The term "explosive weapon" when used in reference to the devices shown in evidence is easily understood and need not be defined. The jurors would surely have known that beer bottles filled with gasoline-soaked rags were "incendiary" bombs or "similar device[s]." They clearly fit within the definition of "explosive weapon" and thus the term need not have been defined. Affirmed.

All concur.