STATE of Missouri, Respondent,

v.

Bryan E. WURTZBERGER, Appellant.

No. SC 82871.

Supreme Court of Missouri,
En Banc.

March 6, 2001.

Rehearing Denied April 24, 2001.

Michael A. Gross, Asst. Public Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. General, Breck K. Burgess, Assistant Attorney General, Jefferson City, for Respondent.

LIMBAUGH, Judge.

A jury convicted appellant Bryan Wurtzberger of attempt to manufacture a controlled substance, methamphetamine (meth), in violation of section 195.211, RSMo 1994. The trial court, following the jury's recommendation, sentenced him to 12 years in prison. After appeal to the Court of Appeals, Western District, this Court granted transfer, Mo. Const., art. V, sec. 10, (1) to resolve an alleged conflict regarding the availability of Rule 30.20 plain-error review when counsel fails to object to the verdict-directing instruction as required by Rule 28.03 and (2) to determine whether the submitted instruction resulted in manifest injustice requiring reversal. The judgment is affirmed.

I.

Viewed in the light most favorable to the verdict, the facts are as follows:

On March 31, 1997, appellant purchased 12 cans of starter fluid, which is dimethyl ether, an organic solvent commonly used to manufacture meth, from Canton Auto Supply. Employees of that business reported the sale and the purchaser's license plate number to the LaGrange police department, and officers traced the license plate number to a car owned by appellant. A few days later, the officers drove to a house trailer where appellant resided, and on their arrival, they smelled a strong odor of ether around the trailer and a shed located 45 to 50 feet away. The officers also saw that an electric cord ran from the house trailer to the shed, which was consistent with information provided by Bruce Hoffman, a former construction worker for appellant's father, who had previously told one of the officers that appellant had asked him how to run electrical power to the shed. At that point, the officers left the premises to obtain a search warrant.

Later that day, the officers returned, armed with the search warrant, and found appellant in the trailer. Strong ammonia fumes emanated from the shed, which was locked. After using a cutting tool to open the shed, they found that the fumes inside were so strong that they had to ventilate before completing their search. At trial, Sergeant Douglas Rader of the Northeast Missouri Narcotics Task Force testified

that the shed contained a lab set up to manufacture meth by the "Nazi" method, which he then described:

> It is started by mixing three precursor ingredients which includes your pseudoephedrine, lithium or sodium metal and anhydrous ammonia. The lithium metal is extracted from lithium batteries; the pseudoephedrine is taken from the Pseudoephedrine your cold pills; and the anhydrous ammonia comes out of the farmers' tanks in the fields. Mixing those three together causes a chemical reaction and broke down then into a solvent [starter fluid] to cleanse it. As you break it down into a solvent, its in a liquid form. From then you mix the sulfuric acid and salt together to make hydrochloride gas, which you run the gas in to the solvent containing the methamphetamine base, and it crystallizes the methamphetamine.

The items seized by the officers included: several jars of binding material that had been separated from pseudoephedrine pills, a filter coated with white powder, a measuring cup with white residue, a plastic cup with white residue, a glass jar of solvent (starter fluid), a hot plate (used to cook pseudoephedrine down to powder), a gas can fitted with tubes and hoses (modified into a hydrochloric gas generator), a container of rock salt (when mixed with sulfuric acid, makes hydrochloric gas), three bottles of sulfuric acid, a turkey baster (used to separate meth base from water), nine lithium batteries (used as sources of lithium), a piece of lithium battery casing (the battery had been taken apart to remove the lithium), and heavy-duty rubber gloves (used to protect hands from acid and other harsh chemicals used to manufacture meth). According to Sergeant Rader, these items are all necessary to the "Nazi" process.

The defense called Isabelle Reeves, a "close friend" of appellant, who testified that she and Lisa Pollock were the persons who had been manufacturing meth in appellant's shed, but without his permission. When Pollock testified, however, she denied any involvement. In addition, the defense called appellant's father who testified that he owned the trailer home and allowed his son to live there. He also stated that he locked the shed a couple of days before his son's arrest, although he was not questioned as to whether he smelled fumes around the shed or whether his son had a key to the shed's lock.

On this record, the case was submitted to the jury, which was instructed on the alternative theories that appellant acted either as a principal or an accomplice in the commission of the crime charged. Upon conviction, appellant sought plain-error review of the trial court's alleged errors in failing to 1) direct a verdict in appellant's favor due to insufficiency of the state's evidence, and 2) define the term "attempt" in the verdict-directing instruction or "guide the jury in determining whether a 'substantial step' had been taken toward the commission of the charged offense."

## II.

With respect to the first issue, the state, although charging appellant alternatively as a principal and an accessory, need only prove appellant's liability as an accessory. Missouri has eliminated the distinction between principals and accessories, and now, all persons who act in concert to commit a crime are equally guilty. *State v. Barnum*, 14 S.W.3d 587, 591 (Mo. banc 2000). Under section 562.041.1(2), RSMo 1994, "[a] person is criminally responsible for the conduct of another when ... [e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense,

he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." The state is not required to show that the defendant "personally committed every element of the crime." *Id.* Furthermore, "any evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction." *State v. Clay,* 975 S.W.2d 121, 139 (Mo. banc 1998), *cert. denied,* 525 U.S. 1085, 119 S.Ct. 834, 142 L.Ed.2d 690 (1999).

■ In this case, to convict appellant of an attempt to manufacture meth under a theory of accomplice liability, the state was required to prove that: (1) Reeves (and perhaps others) attempted to manufacture meth; and (2) appellant, with the purpose of promoting or furthering the manufacture of meth, acted together with or aided Reeves in committing that offense. Secs. 564.011 and 562.041.1(2); MAI–CR3d 304.04; MAI–CR3d 304.06. Appellant has essentially conceded that an attempt to manufacture meth took place, and thus, the only question is whether there was evidence from which the jury could reasonably conclude that appellant was purposefully acting together with or aiding Reeves in the attempt.

■ In that regard, the record shows that a reasonable juror could infer 1) that appellant purchased the starter fluid and gave it to Reeves to aid in her attempt to manufacture meth; 2) that he ran the extension cord from his home to the shed to provide electricity for the same purpose; 3) that he knew that meth was being manufactured because there was a strong odor of ether or ammonia around the shed, which was only 45 to 50 feet from his residence; and 4) that his close personal friendship with Reeves was the reason a) that she chose to use the shed adjacent to his residence to manufacture meth and b) that they were otherwise acting in concert.

This evidence was more than sufficient to support the verdict, and the trial court committed no error, plain or otherwise, in failing to direct a verdict for appellant.

### III.

Appellant's second claim challenges the verdict-directing instruction. Section 195.211.1, RSMo 1994, the crime charged, provides that "it is unlawful for any person to ... attempt to distribute, deliver, manufacture or produce a controlled substance...." The inchoate offense of attempt under section 564.011, RSMo 1994, has two elements: (1) the defendant has the purpose to commit the underlying offense and (2) the doing of an act that is a substantial step toward the commission of that offense. Consistent with section 564.011, MAI–CR3d 304.06, the approved instruction for attempt, requires the jury to find "that such conduct was a substantial step toward the commission of the offense" and defines "substantial step" as "conduct that is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense...."

■ The attempt instruction submitted at trial, however, incorporated the four elements of common-law attempt: (1) the intent to commit the crime, (2) an overt act toward its commission, (3) failure of consummation, and (4) the apparent possibility of commission, as approved in *State v. Reyes,* 862 S.W.2d 377, 381 (Mo.App.1993). That instruction, based on MAI CR3d 304.04 and 325.12, as modified, stated:

A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with the other persons with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other persons in committing it.

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about April 9, 1997, in the County of Lewis, State of Missouri, the defendant or Isabelle Reeves or Lisa Pollock, attempted to manufacture meth, a controlled substance, and

Second, that the defendant or Isabelle Reeves or Lisa Pollock knew that the substance he or she attempted to manufacture was meth, then you are instructed that the offense of attempted manufacture of a controlled substance has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of attempting to manufacture a controlled substance, the defendant acted together with or aided Isabelle Reeves or Lisa Pollock in committing the offense, then you will find the defendant guilty of attempted manufacture of a controlled substance,

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you do find the defendant guilty of attempt to manufacture a controlled substance you will assess and declare the punishment at imprisonment for a term of years fixed by you, but not less than five years and not to exceed fifteen years.

While appellant's appeal was pending in the court of appeals, this Court handed down *State v. Withrow*, 8 S.W.3d 75 (Mo. banc 1999), which held that Missouri does not recognize common-law attempt and, therefore, "[a]n attempt to commit an offense, regardless of whether the attempt is under sec. 564.011, RSMo 1994, or under separate provisions proscribing attempting a specified crime, means a substantial step toward the commission of an offense." *Id.* at 80. The *Withrow* Court specifically overruled *State v. Reyes* and cases relying upon it "[t]o the extent cases have incorporated the four common-law elements into the substantial step analysis." *Id.* at 79. Because the case at hand was pending on appeal when *Withrow* was decided, the rule announced by this Court in *Withrow* controls. *State v. Ferguson*, 887 S.W.2d 585, 587 (Mo. banc 1994). Accordingly, the state's verdict-directing instruction was erroneous.

■ Appellant, however, failed to object to the instruction or submit an instruction that defined "substantial step" in the context of an attempt. In fact, at the instruction conference, appellant's counsel told the court expressly that he had no objection to the instruction. Because the error has not been preserved, appellant asks for relief under Rule 30.20, which provides, in pertinent part that, "... plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom"

■ The state counters, citing Rule 28.03 and *State v. Martindale*, 945 S.W.2d 669 (Mo.App.1997), that appellant waived all appellate review and this Court is precluded from performing even plain-error review. Rule 28.03 provides, in pertinent part:

Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

In *State v. Martindale*, the Eastern District held that "[i]f ... Rule 28.03 is to

have any effect, the failure to specifically object must constitute a waiver." *Id.* at 673. Although the state is correct that appellant waived appellate review when counsel failed to raise a specific objection to the disputed attempt instruction, it misconstrues the extent of the waiver. Unpreserved claims of plain error may still be reviewed under Rule 30.20 if manifest injustice would otherwise occur. To be sure, there is some confusion regarding the interplay between Rule 30.20 and Rule 28.03. *State v. Bradshaw,* 26 S.W.3d 461 (Mo. App.2000), a Western District case, interpreted *State v. Martindale* as disallowing all review, including plain-error review, in the absence of a timely objection. But, in fact, there is no case, not even *Martindale* itself, holding that Rule 28.03 trumps Rule 30.20.

■■■ Turning to the merits of the requests for plain-error relief, it is well-settled that a trial court's failure to correctly instruct the jury on an element of the crime charged that was undisputed at trial cannot result in manifest injustice. *Id.* at 473. Here, it was undisputed that Reeves had indeed attempted to manufacture meth on appellant's property, and appellant's defense was simply that he was not involved. The definition of "attempt," or lack thereof, had nothing to do with any of the disputed matters at trial, so appellant could not have been prejudiced. Thus, the trial court's failure to correctly instruct the jury on "substantial-step" attempt did not create manifest injustice requiring reversal in this case.

The judgment is affirmed.

PRICE, C.J., WHITE, HOLSTEIN, WOLFF and BENTON, JJ., concur.

LAURA DENVIR STITH, J., not participating.