**STATE of Missouri, Plaintiff–Respondent,**

v.

**Donald K. MCLARTY, Defendant–Appellant.**

**No. SD 30044.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 29, 2010.

Alexa Irene Pearson, Columbia, MO, for Appellant.

Chris Koster, Atty. Gen., Daniel McPherson, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Judge.

Donald McLarty (Defendant) was charged by amended information with the class B felony of attempted manufacture of

methamphetamine. *See* § 195.211.[1] A jury found Defendant guilty of that crime. Defendant presents five points on appeal. Finding no merit in any of these points, we affirm. For ease of analysis, we address Defendant's points out of order. The relevant facts will be provided in connection with our discussion of each point.

### Point I

Defendant's first point challenges the sufficiency of the evidence to support his conviction. We view the evidence and all reasonable inferences derived therefrom in the light most favorable to the verdict; all contrary evidence and inferences are disregarded. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). "We defer to the jurors' superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony." *State v. Lopez–McCurdy*, 266 S.W.3d 874, 876 (Mo.App. 2008). Viewed from this perspective, the following evidence was presented at trial.

At approximately 11:00 a.m. on February 7, 2009, Detective Jeremy Yates of the Kennett Police Department received a call that two men were purchasing pseudoephedrine pills at the Kennett Wal–Mart. The caller provided a description of the two men. Detective Yates went to Wal–Mart and parked outside. He observed two men, who matched the caller's description, leave the store. Both men were carrying bags. They walked together toward a white 2002 Dodge Stratus (the Stratus). Detective Yates provided this information to Lieutenant Tim Trowbridge of the Kennett Police Department. He arrived at the Wal–Mart while the two men were getting into the Stratus.

Lieutenant Trowbridge provided the license plate number on the Stratus to dispatch and was told that the plate was registered to another vehicle. The Stratus left the parking lot, and Lieutenant Trowbridge followed it. When the Stratus pulled into a parking lot without making a proper turn signal, Lieutenant Trowbridge initiated a traffic stop. He observed a 26 oz. box of table salt sitting in the back window. Christopher Barbre (Barbre) was sitting in the driver's seat; Defendant was sitting in the front passenger seat.

Kennett Police Corporal Craig Moody arrived at the scene to assist. He went to the passenger side where Defendant was seated and asked him to get out of the vehicle. Defendant's speech was slurred and incoherent, and his eyes were dilated. He was unable to maintain his balance without leaning on the Stratus. He was unable to be questioned by the police at that point.

In the front passenger seat where Defendant had been sitting, there were some plastic Wal–Mart bags. One bag contained an unopened box of Sudafed brand pseudoephedrine cold medication and a bottle of hydrogen peroxide. Another bag contained lithium batteries and a receipt. There was another unopened box of Sudafed cold medication in the vehicle. Police also saw four empty boxes of Aleve–D, Claritin–D and Equate brand pseudoephedrine cold medication in the front passenger compartment. Two of these empty boxes were lying on the floorboard between the car door and right side of the passenger seat where Defendant had been sitting. There were eight loose blister packs of pseudoephedrine pills (each containing 10 pills) on the front passenger seat. Some of these blister packs had been removed from the box and placed into a small paper sack. Barbre and De-

---

1. All references to statutes are to RSMo Cum. Supp. (2009) unless otherwise specified. All references to rules are to Missouri Court Rules (2010).

fendant were arrested. A bag of marijuana was found in Defendant's right front pocket during a search incident to arrest. In addition to the pseudoephedrine, the following items were recovered from the Stratus during a subsequent inventory search: (1) a coffee grinder; (2) coffee filters; (3) lithium batteries; (4) receipts from various stores; and (5) a glass pipe with methamphetamine residue on it in the center console between the front seats.[2] Some of the receipts were from various Wal–Mart stores and showed the purchase of cold medication on five different occasions in January and February 2009.[3] One receipt from the Schnucks Supermarket in Cape Girardeau showed the purchase of three Ace instant cold compresses on January 15th. Another receipt showed that Barbre had purchased a coffee grinder and lithium batteries at the Malden Wal–Mart on February 7th.

The amended information charged Defendant with attempting to manufacture methamphetamine in violation of § 195.211 because he "knowingly compiled pseudoephedrine, lithium batteries, filters, salt and hydrogen peroxide, and such conduct was a substantial step toward the commission of the crime. . . ."

At trial, the jury was read a stipulation that Wal–Mart pharmacy records showed: (1) Barbre purchased a box of Equate pseudoephedrine 12–hour tablets containing 2.4 grams of pseudoephedrine at the Poplar Bluff store on February 6, 2007;

(2) Defendant purchased one box of Claritin–D 120 mg. cold tablets containing 3.6 grams of pseudoephedrine at the Malden store on February 7, 2009 at 9:46 a.m.; (3) Barbre purchased another box of Equate pseudoephedrine 12–hour tablets containing 2.4 grams of pseudoephedrine at the Kennett store on February 7, 2009 at 10:58 a.m.; and (4) Defendant purchased a box of Aleve Cold & Sinus tablets containing 2.4 grams of pseudoephedrine at the Kennett store on February 7, 2009 at 11:06 a.m. All three brands of cold medication were found in the Stratus when it was searched by police.

Lieutenant Trowbridge, who was part of the Bootheel Drug Task Force, gave the following testimony. He had been trained about how methamphetamine was clandestinely manufactured. He was familiar with various methods and techniques that were used to make the drug. Pseudoephedrine is the principal ingredient that is necessary to manufacture methamphetamine. One method of acquiring this pseudoephedrine is to have someone purchase and accumulate the necessary pseudoephedrine pills. Law enforcement officers refer to such persons as "ingredients getters[.]" It is illegal for a person to purchase more than 3.6 grams of pseudoephedrine in a 24–hour time period.[4] One method of making the drug, known as the "Shake–and–Bake" recipe, uses lithium batteries to get the reaction going. A coffee grinder is commonly used to crush

---

**2.** The glass pipe with residue on it was admitted as Exhibit 10. Laboratory tests confirmed that the residue was methamphetamine.

**3.** The receipts were separately marked and admitted in evidence. Exhibit 5 was a Wal–Mart receipt showing the purchase of cold medication on February 7th at 11:07 a.m. Exhibit 7 was a Wal–Mart receipt showing the purchase of cold medication on February 7th at 9:46 a.m. Exhibit 8 was a Wal–Mart receipt showing the purchase of cold medication on

February 6th. Exhibit 9 contained three different receipts. Two receipts showed the purchase of cold medication on January 12th and 15th.

**4.** Lieutenant Trowbridge was referring to § 195.417, which makes it illegal for a person to purchase more than 3.6 grams of pseudoephedrine in a 24–hour period or more than 9 grams of pseudoephedrine in a 30–day period.

the pseudoephedrine pills. Ace instant cold compresses contain ammonium nitrate, which is one the main ingredients in the "Shake–and–Bake" method of producing methamphetamine. Ammonium nitrate, table salt, muriatic acid and hydrogen peroxide are used during the "shake" part of the recipe. Coffee filters are used to filter out the methamphetamine.

Crime lab technician Joanna Sides also had received significant training with respect to the various methods used in the clandestine manufacture of methamphetamine. She had observed large numbers of items seized from clandestine labs. She gave the following testimony:

Q. And in this case, the police have testified that they seized a number of pseudoephedrine pills or pills containing pseudoephedrine, lithium batteries, table salt, coffee grinder, coffee filter, hydrogen peroxide. Are those all items that are normally associated by you in connection with the clandestine manufacture of methamphetamine?

A. Each of those items can be used to make methamphetamine.

Q. And together would indicate to you that that was something that was occurring or going to occur if those things were all assembled in one place?

A. If they were all assembled in one place, yes, it would be suspicious.

At the close of all of the evidence, defense counsel filed a motion for judgment of acquittal. The trial court denied the motion.

■■■ On appeal, Defendant contends the evidence was insufficient to support his conviction for attempting to manufacture methamphetamine in violation of § 195.211. Defendant argues the State failed to prove that: (1) Defendant or Bar-

bre compiled each of the items listed in the information; and (2) Defendant or Barbre actually or constructively possessed such items. Appellate review is limited to determining whether there was sufficient evidence from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt. *State v. Reed,* 181 S.W.3d 567, 569 (Mo. banc 2006). Methamphetamine is a Schedule II controlled substance. *See* § 195.017.4(3)(c). Except as authorized by §§ 195.005–195.425, it is unlawful for any person to attempt to manufacture a controlled substance. § 195.211.1. The definition of "manufacture" includes the production, preparation, compounding or processing of a controlled substance. § 195.010(23). Conviction on a charge of attempting to manufacture methamphetamine requires proof that: (1) the defendant took a substantial step toward commission of the offense; and (2) the defendant engaged in such conduct with the purpose of committing the offense. *Tilley v. State,* 202 S.W.3d 726, 737 (Mo.App.2006); *State v. White,* 14 S.W.3d 121, 126 (Mo.App.2000). A "substantial step" is defined as "conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." § 564.011.1 RSMo (2000). "Therefore, an attempt to manufacture methamphetamine requires conduct strongly corroborative of the act of producing methamphetamine." *White,* 14 S.W.3d at 127.

■■ Because the State presented evidence implicating Barbre in the commission of the charged offense, it is important to note that all persons who act in concert to commit a crime are equally guilty under Missouri law. *State v. Wurtzberger,* 40 S.W.3d 893, 895 (Mo. banc 2001). "A person is criminally responsible for the conduct of another when … [e]ither before or

during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." § 562.041.1(2) RSMo (2000). The State is not required to show that the defendant personally committed each element of the crime. *Wurtzberger,* 40 S.W.3d at 896. Any evidence showing affirmative participation by aiding another to commit the crime is sufficient to support a conviction. *Id.*

Lieutenant Trowbridge testified that pseudoephedrine is the principal ingredient in methamphetamine. Persons acting as "ingredients getters" purchase and accumulate pseudoephedrine pills to be used in the manufacture of methamphetamine. Receipts found in the Stratus showed prior purchases of pseudoephedrine pills on January 12th and 15th. Barbre purchased a box of pseudoephedrine pills at the Poplar Bluff Wal–Mart on February 6th. Defendant purchased a box of pseudoephedrine pills at the Malden Wal–Mart on February 7th. Barbre and Defendant each purchased a box of pseudoephedrine pills at the Kennett Wal–Mart on February 7th. Defendant's two purchases within a 24–hour period was a violation of § 195.417. This evidence supports the reasonable inference that both Barbre and Defendant were purchasing and accumulating pseudoephedrine pills.

There also was ample circumstantial evidence from which the jurors could reasonably find that Defendant and Barbre were accumulating these pills for the purpose of manufacturing methamphetamine. One receipt in Barbre's vehicle showed that pseudoephedrine cold medication had been purchased on January 15th. That same day, another receipt documented the purchase of three Ace instant cold compresses. This product contains ammonium nitrate, which is one of the main ingredients necessary for the "Shake–and–Bake" method of manufacturing methamphetamine. Other items used in this manufacturing method include a coffee grinder, coffee filters, lithium batteries, table salt and hydrogen peroxide. All of these items were found in the Stratus. The hydrogen peroxide was found in a plastic bag with an unopened box of Sudafed. The Wal–Mart pharmacy records showed that Barbre had purchased a box of Sudafed the previous day. A receipt from the Stratus showed that Barbre also had purchased a coffee grinder and lithium batteries on the morning of February 7th at the Malden Wal–Mart. Other than muriatic acid and a heat source, all of the components necessary for the "Shake–and–Bake" method of manufacturing methamphetamine were recovered from the Stratus after Barbre and Defendant were arrested. In addition, a glass pipe containing methamphetamine residue was found in the center console of the vehicle.

In sum, the State presented sufficient evidence from which the jury could have found beyond a reasonable doubt that: (1) acting together, Defendant and Barbre took a substantial step toward the manufacture of methamphetamine; and (2) they engaged in such conduct for that purpose. Such evidence is sufficient to support Defendant's conviction. *See Tilley,* 202 S.W.3d at 737; *White,* 14 S.W.3d at 126. Their conduct was strongly corroborative of the firmness of their purpose to manufacture methamphetamine. *See* § 564.011.1 RSMo (2000); *White,* 14 S.W.3d at 127. Defendant was in actual possession of the pseudoephedrine pills, hydrogen peroxide and lithium batteries in his seat because the items were within his easy reach and convenient control. *State v. Agee,* 37 S.W.3d 834, 836 (Mo.App.2001). Intent to manufacture methamphetamine could be inferred from Defendant's prior

**564**

purchases of pseudoephedrine in amounts exceeding the statutory maximum and the discovery in the Stratus of nearly all of the items necessary for the "Shake–and–Bake" manufacturing method. *See State v. Rollett*, 80 S.W.3d 514, 523 (Mo.App.2002).[5] In order to convict Defendant on this attempt offense, it was not necessary for the State to prove that Defendant personally accumulated or possessed all of the items necessary to manufacture methamphetamine. *See Wurtzberger*, 40 S.W.3d at 895–96. There was ample evidence from which the jurors could find that, for the purpose of manufacturing methamphetamine, Defendant aided Barbre in accumulating the necessary ingredients and other items required for the manufacturing process. This was sufficient to support Defendant's conviction. *See Rollett*, 80 S.W.3d at 523–24; § 562.041.1(2) RSMo (2000). Point I is denied.

*Point III*

Defendant's third point relates to the admission of evidence concerning the glass pipe containing methamphetamine residue that was recovered during the inventory search of the Stratus. Prior to trial, defense counsel filed a motion in limine to exclude any reference to the pipe. The motion asserted that evidence concerning the pipe was irrelevant to the charged offense, and its admission would prejudice Defendant. The trial court overruled the motion. At trial, evidence concerning the pipe was admitted without objection. Defendant's motion for new trial contained no reference to this matter. On appeal, Defendant contends the admission of this evidence was so prejudicial that a new trial should be granted.

5. *Rollett* was superseded by statute on other grounds as stated in *State v. Young*, 139

Rule 30.20 authorizes an appellate court, in its discretion, to review for plain error affecting a defendant's substantial rights "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id.* "Plain errors are evident, obvious, and clear, and we determine whether such errors exist based on the facts and circumstances of each case." *State v. Johnson*, 182 S.W.3d 667, 670 (Mo. App.2005). Defendant bears the burden of establishing that the trial court committed an evident, obvious and clear error. *State v. Thurman*, 272 S.W.3d 489, 498 (Mo.App. 2008). Defendant also bears the burden of proving the existence of a manifest injustice or a miscarriage of justice. *State v. Stanley*, 124 S.W.3d 70, 77 (Mo.App.2004). "A claim of plain error places a much greater burden on a defendant than an assertion of prejudicial error." *State v. Wright*, 216 S.W.3d 196, 199 (Mo.App. 2007). "Plain error and prejudicial error are not synonymous terms, and mere allegations of error and prejudice will not suffice for reversal under plain error review." *Id.* Plain error can serve as the basis for granting relief on direct appeal only if the error was outcome determinative. *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006). Defendant argues that the trial court committed plain error in overruling the motion in limine because there was insufficient evidence to show that Defendant had actual or constructive possession of the pipe. We find no merit in this argument.

First, the State's theory of the case was that, acting together, Barbre and Defendant took a substantial step toward the manufacture of methamphetamine, and they engaged in such conduct for that purpose. Thus, it was up to the jury to

S.W.3d 194, 198 n. 4 (Mo.App.2004).

decide whether Defendant's conduct demonstrated an intention to aid Barbre in the manufacture of methamphetamine. *Rollett*, 80 S.W.3d at 524. The ingredients and other items used in the "Shake–and–Bake" method of manufacturing methamphetamine (e.g., coffee grinder, filters, hydrogen peroxide) have other lawful uses. An important question for the jury to answer was whether Barbre and Defendant intended to use these items for the unlawful purpose of manufacturing methamphetamine. The testimony of Lieutenant Trowbridge and crime lab technician Sides supported the reasonable inference that these common household items were going to be used for that purpose. The admission of evidence that a glass pipe containing methamphetamine residue was found in the center console of Barbre's car supported that inference. Thus, the evidence relating to this drug paraphernalia was admissible on the issue of Defendant's intent. *See, e.g., State v. Yahne*, 943 S.W.2d 741, 746 (Mo.App.1997) (evidence that police found drug paraphernalia and drug residue during a search of the premises was admissible to prove defendant's intent to manufacture methamphetamine); *State v. Steward*, 844 S.W.2d 31, 34–35 (Mo.App. 1992) (evidence that police found Demerol and a drug pipe during a search of the premises was properly admitted on the issue of the defendant's intent to possess cocaine); *State v. Hall*, 687 S.W.2d 924, 929 (Mo.App.1985) (evidence that police found hashish and drug paraphernalia during a search of the premises was admissible to prove intent) *declined to follow on other grounds by State v. Schneider*, 736 S.W.2d 392, 402 n. 7 (Mo. banc 1987).

■ Second, we note that Defendant has cited no authority, and we are aware of none, holding that the admission of similar evidence constituted plain error. Assuming *arguendo* that the trial court erred in admitting evidence concerning the glass pipe, this alleged error was not outcome determinative. Defendant does not complain on appeal about the trial court's admission of evidence that Defendant was grossly intoxicated when arrested or that police found marijuana in Defendant's pocket. The jurors could consider this evidence on the issue of intent as well. If the admission of evidence concerning the glass pipe was error, it was harmless because it was cumulative of other evidence admitted for the same purpose. *State v. Franks*, 228 S.W.3d 607, 610 (Mo.App. 2007). Point III is denied.

### Point IV

Defendant's fourth point relates to the giving of Instruction No. 9, which stated:

> If you find and believe from the evidence that the defendant was involved in an offense other than the one for which he is now on trial, you may consider that evidence on the issue of knowledge or intent of the defendant. You may not consider such evidence for any other purpose.

At the instruction conference, defense counsel acknowledged that this instruction would benefit Defendant by not permitting the jurors to misuse evidence that he possessed the glass pipe containing methamphetamine residue, possessed marijuana or purchased more than the legal daily limit of pseudoephedrine. Counsel argued, however, that the instruction should not be given because it called attention to offenses for which Defendant was not on trial. The prosecutor responded that the instruction, which aided the jury in only drawing the permissible inferences from evidence of uncharged crimes, should be given if requested by either party. The court overruled the objection and gave the instruction.

Defendant contends the trial court erred in giving Instruction No. 9 because it should only be given when there is evidence that the accused was involved in a related offense. Defendant argues that Instruction No. 9 should not have been given in the case at bar because there was no proof that he actually or constructively possessed the glass pipe, and his possession of marijuana was unrelated to the charged crime.

■ The first issue we must address is the applicable standard of review. A party is prohibited from assigning as error the giving of an instruction "unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Rule 28.03; *State v. Edwards,* 116 S.W.3d 511, 545 (Mo. banc 2003). Because the objections Defendant is attempting to assert on appeal were not presented to the trial court at the instruction conference, they are not preserved for review. *State v. Carney,* 195 S.W.3d 567, 570 (Mo. App.2006); *State v. Biggs,* 170 S.W.3d 498, 503 (Mo.App.2005). Accordingly, Defendant is not entitled to relief on appeal unless the giving of Instruction No. 9 constituted plain error. *State v. Grice,* 914 S.W.2d 360, 369 (Mo.App.1995).

"An instructional error rises to the level of plain error only when the appellant demonstrates that the instruction so misdirected or failed to instruct the jury that it is apparent that the error affected the jury's verdict." *State v. Johnson,* 207 S.W.3d 24, 48 (Mo. banc 2006). Consequently, an erroneous instruction seldom results in plain error. *State v. Merrick,* 257 S.W.3d 676, 680 (Mo.App.2008).

■ Defendant has failed to meet his burden of establishing plain error here. Instruction No. 9 was patterned after MAI–CR 3d 310.12. Notes on Use 2 states that this instruction must be given if requested by either party. *Id.* In determining whether this pattern instruction should given, the Notes on Use in MAI–CR 3d 310.10 must be consulted. In relevant part, that instruction's Notes on Use 3(1) states:

(a) Prior crimes committed by the defendant will be referred to as either "related" or "unrelated." "Related crimes" are those that may go to show intent, motive, etc. Such crimes may be shown by the state as substantive evidence of guilt of the crime on trial, whether the defendant testifies or not. See MAI–CR 3d 310.12....

MAI–CR 3d 310.10, Notes on Use 3(1)(a). For the reasons already discussed in disposing of Defendant's third point on appeal, the evidence relating to the glass pipe and Defendant's possession of marijuana was properly admitted on the issue of Defendant's intent. *See State v. Dowell,* 25 S.W.3d 594, 603 (Mo.App.2000) (because defendant was charged with knowingly manufacturing methamphetamine, evidence relating to his possession of a syringe and a baggie of methamphetamine was admissible to prove his intent). Therefore, Instruction No. 9 was properly given in order to instruct the jury on how it should use this evidence of prior related crimes. *See State v. Vivone,* 63 S.W.3d 654, 658 (Mo.App.1999). Point IV is denied.

*Point V*

■ Defendant's fifth point contends the trial court committed plain error in giving Instruction No. 5, which stated:

A person is responsible for his own conduct and he is also responsible for the conduct of other persons committing an offense if he acts with the other persons with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or en-

courages the other persons in committing it.

If you find and believe from the evidence beyond a reasonable doubt:

First, on or about February 7, 2009, in the County of Dunklin, State of Missouri, the defendant and/or Christopher Barbre compiled pseudoephedrine, lithium batteries, filters, salt, and hydrogen peroxide, and

Second, that such conduct was a substantial step toward the commission of manufacturing methamphetamine, a controlled substance, and

Third, that the defendant or Christopher Barbre engaged in such conduct for the purpose of manufacturing a controlled substance,

[T]hen you are instructed that the offense of attempt to manufacture a controlled substance has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the commission of that attempt to manufacture a controlled substance, the defendant acted together with or aided or encouraged Christopher Barbre in committing the offense, then you will find the defendant guilty [of] attempt to manufacture a controlled substance.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of the propositions, you must find the defendant not guilty of that offense.

A person commits the crime of manufacturing or producing a controlled substance if he knowingly manufactures or produces a controlled substance and he knew or was aware that it was a controlled substance.

As used in this instruction, the term "substantial step" means conduct which is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense of manufacturing a controlled substance.

Defense counsel did not object to Instruction No. 5 at trial, and the motion for new trial contained no reference to this instruction. For the first time on appeal, Defendant contends the trial court committed plain error in using the word "compiled" in paragraph First of the instruction. Citing *State v. Farris*, 125 S.W.3d 382 (Mo.App. 2004), Defendant argues that "compiled" is the equivalent of "possessed," so the latter word should have been used in paragraph First and defined for the jury.

As noted in our discussion of Point IV, instructional error rises to the level of plain error only when an appellant demonstrates that the instruction so misdirected or failed to instruct the jury that it is apparent the error affected the verdict. *Johnson*, 207 S.W.3d at 48. Consequently, appellate courts seldom find that an erroneous instruction resulted in plain error. *Merrick*, 257 S.W.3d at 680.

In *Farris*, a citizen drove by a parked automobile. One man was in the car, and two others were standing outside. The citizen smelled ether, suspected she had passed a methamphetamine lab and called the police to report the description of the car. Police passed the vehicle on the way to the scene, and it sped away. While in pursuit, the officers smelled ether. When the vehicle was stopped, police arrested all three men: Zike, the car's owner; Roe, a passenger; and Farris, another passenger. Glassware was found in the passenger compartment. During a search of the area where the car had been parked and the road over which it had traveled, police found various items used in the manufacture of methamphetamine (anhydrous ammonia, coffee filters, a muriatic acid generator, etc.) and methamphetamine residue.

In the trunk of Zike's car, police found a cooler containing coffee filters, hoses, duct tape and a glass Pyrex dish. Farris was charged with attempting to manufacture methamphetamine by "possessing" items used to manufacture that controlled substance. *Id.* at 386. At trial, the State presented no evidence tending to prove that Farris had been involved in obtaining any of the items found by police. The State also did not rely upon an accomplice liability theory as a basis for conviction. *Id.* The only substantial step hypothesized in the verdict-directing instruction was that "[Farris] possessed items used in the manufacture of methamphetamine...." *Id.* at 389. Defense counsel objected to the instruction because it did not include the definition of possession found in MAI–CR 3d 333.00. At that time, however, the Notes on Use for MAI–CR 3d 325.06.2 did not require or authorize the use of that definition. The trial court overruled the objection and gave the verdict-directing instruction without the definition. Defense counsel did not raise the issue in the motion for new trial. *Id.* at 389–90.

On appeal, the western district of this Court found that the trial court committed plain error by giving the verdict-directing instruction without defining "possession." To prove the crime of attempted manufacture of methamphetamine, the State had to prove that the defendant had the intent to manufacture methamphetamine and that he performed an act that was a substantial step toward manufacturing methamphetamine. The substantial step hypothesized in the verdict-directing instruction was that the defendant possessed items used in the manufacture of methamphetamine. *Id.* at 391. That element was contested at trial. *Id.* at 394. The prosecutor argued that the defendant possessed the items because they came out of the vehicle in which he was a passenger, which the appellate court noted is "an incorrect statement of the law as to the standard for possession...." *Id.* Therefore, the giving of the verdict-directing instruction without a definition of possession was plain error. *Id.* at 394–95.

*Farris* does not support Defendant's argument that the giving of Instruction No. 5 in this case was plain error. In *Farris*, there was no evidence that the defendant had been involved in any way in obtaining the recovered items which could be used to manufacture methamphetamine. In addition, the case did not involve the issue of accomplice liability, by which the actions of others could be imputed to Farris. The only substantial step presented to the jury was Farris' possession of the items, which he disputed. The absence of a definition permitted the State to argue that Farris possessed the items simply by being in proximity to them, which was not a correct statement of the law. In contrast, the State did present evidence in the case at bar that Defendant was actively involved in purchasing pseudoephedrine. The jurors could infer an illicit purpose for the purchases because Defendant was violating the law by purchasing amounts in excess of the daily limit. Moreover, Defendant was with Barbre when he bought pseudoephedrine and other items (e.g., lithium batteries, a coffee grinder) that could be used to manufacture methamphetamine. The accomplice liability theory permitted Barbre's conduct to be imputed to Defendant if the jury believed the two men were acting together. There also was a significant difference in the language of the verdict-directing instructions in *Farris* and the case at bar. Instruction No. 5 did not hypothesize that Defendant "possessed" items used to manufacture methamphetamine. Instead, the instruction hypothesized that "the defendant and/or Christopher Barbre compiled pseudoephedrine, lithium batteries, filters, salt,

and hydrogen peroxide...." As relevant here, the dictionary definitions of "compile" include gradually building up, putting together, piling up or gathering into a mass. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 253 (11th ed.2005); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 464 (1986); FUNK & WAGNALLS NEW "STANDARD" DICTIONARY 542 (1952).[6]

As discussed in our disposition of Point I, the State presented evidence from which the jury could reasonably infer that Defendant and Barbre were acting together to gradually build up pseudoephedrine and other materials with the intent to use such items to manufacture methamphetamine. The instruction hypothesized such conduct as the basis for Defendant's criminal liability, and the State argued those facts to the jury. For example, the prosecutor argued that "[w]e can't go into what's inside their heads but we can see what their actions were. They got those things together." The prosecutor's argument was a correct statement of the law of accomplice liability. Thus, Defendant was not improperly convicted based only upon his disputed possession of items used to manufacture methamphetamine, as in *Farris*. Notes on Use 8 for MAI–CR 3d 325.06.2 only requires the use of the word "possessed" and an accompanying definition "if the conduct constituting the substantial step consisted of possession of certain items...." *Id.* The trial court committed no error, plain or otherwise, in giving Instruction No. 5. Point V is denied.

### Point II

 Defendant's second point involves an allegedly improper closing argument by the State. During the rebuttal portion of the State's closing argument, the prosecutor stated:

> [Prosecutor]: We can—the police can investigate these cases and arrest people and bring me reports and I can file charges and we can call witnesses and come in here and the Clerk can administer an oath and I can—they can testify and the Judge can instruct you on the law and Ms. Odom can take it all down. But when you talk to your friends and they talk to you and say, why don't people do something about all this meth cooking that's going on[?]

Defense counsel objected that the prosecutor was improperly arguing the jury should send a message about the war on drugs by convicting Defendant. The trial court overruled the objection. The prosecutor then said:

> You hear people talk about why they didn't do something about this. Well, all these things can go on but in the final analysis that you are the "they" that can do something about this. You can tell people in Dunklin County that it's not acceptable to cook meth here. You can hold [Defendant] responsible for the conduct he engaged in and the things that he assisted Mr. Barbre in doing. I submit to you when you consider the evidence, the testimony, the exhibits and the instructions of the law that the Judge gave you, that there is one inescapable conclusion about what was going on on the morning of February 7th of this year out here at Wal–Mart and that is that they were gathering ingredients to cook meth. That it was their purpose to cook meth. And, again, I can't tell you which one of them was going to do it. But I submit to you that the evi-

---

**6.** No party asked that the jury be given a definition of the word "compiled." In the absence of such a request, no definition was required because this word is generally understood and has no specialized definition. *See, e.g., State v. Neal*, 685 S.W.2d 271, 276 (Mo.App.1985).

dence leads you to the inescapable conclusion that this Defendant, at the very least, was aiding, assisting, helping, he was gathering those ingredients with Mr. Barbre. There is no other possible reasonable explanation for what they were doing other than to cook meth. And I urge you to consider the evidence, consider the law, look at the exhibits, look at the records, discuss it, find him guilty of the offense that he has committed: Attempting to manufacture methamphetamine.

On appeal, Defendant contends this argument was improper because it was designed to arouse the jurors' prejudice and hostility, and thereby obtain a verdict not based upon the facts. We disagree.

"[T]he trial court is best able to assess the prejudicial effect of the prosecutor's statements." *State v. Kriebs,* 978 S.W.2d 460, 466 (Mo.App.1998). Accordingly, the trial court is afforded broad discretion in controlling closing argument, and its rulings are reversed only for an abuse of discretion prejudicing the defendant. *State v. Biggs,* 91 S.W.3d 127, 135 (Mo.App.2002). "A trial court abuses that discretion when it allows statements or arguments by the prosecutor that are plainly unwarranted and clearly injurious to the defendant." *Id.* We find no such abuse of discretion here.

It is "permissible for a prosecutor to argue the necessity for law enforcement, the duty of the jury to convict the defendant to prevent crime and the results to society of a failure to uphold the law." *State v. Collins,* 150 S.W.3d 340, 353 (Mo.App.2004). In the case at bar, the prosecutor did no more than appeal to the jurors to uphold the law and protect their community from the danger of drugs and drug-related crime. Such an argument is permissible. *See, e.g., State v. Roper,* 268 S.W.3d 392, 399–400 (Mo.App.2008); *State*

*v. Burton,* 219 S.W.3d 778, 781–82 (Mo.App.2007); *State v. Smith,* 849 S.W.2d 677, 680–81 (Mo.App.1993); *State v. Hatcher,* 835 S.W.2d 340, 344 (Mo.App.1992). The prosecutor specifically urged the jurors to consider the evidence, exhibits and instructions in reaching their verdict, and he explained why the evidence supported a decision to convict Defendant of the charged crime. Point II is denied.

The judgment of the trial court is affirmed.

RAHMEYER, P.J., and FRANCIS, J., concur.